IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JULIA R.,[1]<br><br>                Plaintiff,<br><br>vs.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 1:24-cv-00011-RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS**<br>**(Docket 12)** |

## I. INTRODUCTION

Claimant filed an application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI") on September 24, 2020, alleging disability beginning July 8, 2020, due to a "broken neck."[2] Following the initial denial and denial on reconsideration, an Administrative Law Judge ("ALJ") held a hearing on September 14, 2023, and issued an unfavorable decision on November 29, 2023.[3] Claimant has exhausted her administrative remedies and seeks relief from this

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Transcript of record ("Tr.") 61.

[3] Tr. 34–60 and 17–27.

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 1
Case 1:24-cv-00011-RRB     Document 15     Filed 03/04/25     Page 1 of 15

Court.[4] She argues that the determination by the Social Security Administration ("SSA") that she is not disabled, within the meaning of the Social Security Act ("the Act"),[5] is not supported by substantial evidence and that the ALJ committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for further proceedings.

The Commissioner of the SSA ("Commissioner") opposes the motion, and Claimant has replied.[6] For the reasons set forth below, Claimant's Motion for Remand at **Docket 12** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for further proceedings.

## II. DISABILITY DETERMINATION PROCEDURE

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[7]

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[8] Specifically:

> An individual shall be determined to be under a disability only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy,

---

[4] Dockets 1, 15.
[5] 42 U.S.C. § 423; 42 U.S.C. § 1381.
[6] Dockets 13, 14.
[7] 42 U.S.C. § 423(d)(1)(A).
[8] 42 U.S.C. § 423(a).

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 2
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 2 of 15

regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[9]

The Commissioner has established a five-step process for determining disability within the meaning of the Act,[10] relevant portions of which are addressed below. A claimant bears the burden of proof at steps one through four in order to make a *prima facie* showing of disability[11] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[12] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2," commonly referred to as "the Grids."[13] The Grids are "a matrix system for handling claims that involve substantially uniform levels of impairment."[14] The Grids consist of three tables, each assessing disability in the context of "maximum sustained work capacity" limited to sedentary, light, or medium work. They present a short-hand method for determining disability based on "various combinations of factors relevant to a claimant's ability to find work," including a claimant's age, education, and work experience. For each combination

---

[9] 42 U.S.C. § 423(d)(2)(A).
[10] 20 C.F.R. § 404.1520(a)(4).
[11] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[12] *Treichler*, 775 F.3d at 1096 n.1.
[13] *Tackett*, 180 F.3d. at 1099.
[14] *Id*. at 1101 (citing 20 C.F.R. pt. 404, subpt. P, app 2).

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 3
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 3 of 15

of these factors, the Grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. The Grids can be used at Step 5 when a claimant is able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work. Where a claimant has significant non-exertional limitations, such as poor vision or pain, reliance on the grids is only appropriate where the grids yield a finding of "disabled."[15] "But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately."[16]

A decision by the Commissioner to deny disability benefits will not be overturned "unless it is either not supported by substantial evidence or is based upon legal error."[17] "Substantial evidence is 'more than a mere scintilla,' but less than a preponderance."[18] In reviewing the ALJ's determination, this Court considers the evidence in its entirety, weighing both the evidence that supports and that detracts from the ALJ's conclusion.[19] Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[20] A reviewing court may only consider the reasons

---

[15] *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006) ("'[W]here application of the grids directs a finding of *disability,* that finding must be accepted by the Secretary . . . whether the impairment is exertional or results from a combination of exertional and non-exertional limitations.' . . . Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of *nondisability*." (emphasis original) (internal citations omitted).
[16] *Id*.
[17] *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).
[18] *Id*.
[19] *Id*.
[20] *Id*.

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 4
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 4 of 15

provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[21] If an ALJ commits legal error, courts will uphold the decision if it is harmless.[22] An error is harmless if it is "inconsequential to the ultimate nondisability determination."[23]

### III. ALJ HEARING & DECISION

The ALJ hearing was held on September 14, 2023.[24] The ALJ took testimony from Claimant, as well as vocational expert Lynn Jones.[25] Claimant testified regarding her prior work as a waitress, a barista, a liquor store manager, a grocery store cashier, a grocery store bookkeeper, and an upholsterer.[26] She testified as to the weight lifted at each of her prior jobs, which she estimated to be less than 20 pounds in every instance. She also testified regarding her medical conditions and associated pain.[27] She said that after surgery on her neck in December 2014, her pain got worse, and the doctors do not want to do more surgery.[28] She testified that the medications she had been prescribed for pain aggravated acid reflux, and she lost too much weight and had to stop taking them, but then the pain returned even worse.[29] She has pancreatitis because of the pills, and cannot take narcotics.[30] She testified the left knee pain attributed to skiing in her youth and arthritis, for which

---

[21] *Id.*
[22] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
[23] *Id.* (citation omitted).
[24] Tr. 34.
[25] The VE testimony is addressed in section IV.C.
[26] Tr. 39–46.
[27] Tr. 46–54.
[28] Tr. 46–47.
[29] Tr. 47–48.
[30] Tr. 48.

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 5
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 5 of 15

she wears a knee brace and received steroid injections.[31] She testified that she stopped working on July 8, 2020, because she could not complete her work tasks. "I was dropping things with my left arm . . . I started getting dizzy from bending over . . . by the end of the day my headaches were bad."[32]

Applying the 5-step process, the ALJ concluded that: **Step 1**, Claimant had not engaged in substantial gainful activity since her alleged onset date, July 8, 2020; **Step 2**, Claimant suffered from severe impairments, including cervical spine degenerative disc disease status post-fusion; mild left knee degenerative changes; and headaches; and **Step 3**, Claimant's severe impairments did not meet any medical listings.[33]

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. RFC is the most someone can do despite their mental and physical limitations.[34] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by his impairments.[35] This RFC assessment is used at both Step Four and Step Five.[36] In evaluating his RFC, the ALJ concluded that Claimant had the capacity

---

[31] Tr. 48; 51.
[32] Tr. 49.
[33] Tr. 19–20.
[34] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[35] 20 C.F.R. § 404.1545(a)(3).
[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*Julia R. v. Comm'r of Social Security*     Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings     Page 6
Case 1:24-cv-00011-RRB     Document 15     Filed 03/04/25     Page 6 of 15

to perform "light work"[37] with several additional limitations including "occasionally reach overhead with the left dominant arm."[38]

At **Step 4**, the ALJ enlisted the help of a vocational expert to determine that Claimant could perform her past relevant work as a grocery checker, with or without additional duties as general ledger bookkeeper.[39]  Having concluded that Claimant was not disabled at Step 4, the ALJ did not reach **Step 5**.

## IV.  DISCUSSION

Claimant argues that the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal errors in denying her benefits.  Specifically, she argues that (1) the ALJ did not support his analysis of Claimant's subjective reports of symptoms with substantial evidence;[40] and (2) the ALJ did not properly evaluate Dr. Makin's opinion, and therefore did not support his analysis with substantial evidence.[41]

### A.  Claimant's Credibility

Once an ALJ concludes that a claimant "has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other

---

[37] "**Light work** involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).
[38] Tr. 21.
[39] Tr. 26.
[40] Docket 12 at 12.
[41] *Id.* at 7.

*Julia R. v. Comm'r of Social Security*　　　　　　　　　　　　　　　　　　Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings　　　　　　　　　　　　　　　　　　　　　　Page 7
Case 1:24-cv-00011-RRB　　　Document 15　　　Filed 03/04/25　　　Page 7 of 15

symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"[42]

Here, while the ALJ concluded that Claimant had provided objective medical evidence that her underlying impairments might reasonably be expected to cause *some* of her alleged symptoms, he further found that her statements regarding the limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[43] He noted that it was a combination of "inconsistencies, and not any one inconsistency in particular that undermines the claimant's symptom reports."[44] Some examples of those reasons include: "malingering behavior" at one examination;[45] inconsistency regarding when her headaches started; refusal of medications;[46] "elevated pain complaints"; the right knee versus left knee issue discussed below; and discrepancy regarding whether or not she needs a "care provider."[47] The Commissioner argues that "the ALJ's reasoning was sufficiently specific and substantial evidence supports it."[48]

But Claimant addresses most of these reasons in her briefing,[49] noting, for example, that the one-time use of an unprescribed cane, without more, does not rise to the

---

[42] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (internal citation omitted).
[43] Tr. 21.
[44] Tr. 22.
[45] Tr. 23. Claimant appeared at the exam using a cane, which was not prescribed.
[46] Tr. 22. The ALJ does not acknowledge Claimant's adverse reactions to some medications.
[47] Tr. 23.
[48] Docket 13 at 2.
[49] Dockets 12, 14.

level of "affirmative evidence" of malingering.[50]  She asserts that any mention of right leg symptoms in the record were "based on what appears to be typographical errors," and not a result of Claimant changing her symptoms to match the imaging.[51]  She argues that the ALJ declined to acknowledge that she was "intolerant of medications,"[52] which explained her reluctance to try new pain relief.

Moreover, the Court notes that the ALJ made internally inconsistent findings as follows:

> **"The claimant's variable and *inconsistent complaints throughout the record* undermine the persuasiveness of the claimant's subjective symptom reports and complaints."[53]**

And

> **"The claimant's testimony is *consistent with her complaints throughout the record* but unsupported by the record."[54]**

"Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."[55]  These two conflicting findings, in addition to the unsupported "inconsistencies" cited by the ALJ, render the ALJ's opinion regarding Claimant's credibility unreviewable.

---

[50] Docket 12 at 14.
[51] *Id.* at 15.
[52] *Id.* at 15, citing Tr. 575.
[53] Tr. 25, lines 3–5 (emphasis added).
[54] Tr. 25, lines 26–27 (emphasis added).
[55] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 9
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 9 of 15

**B.     Harbir Makin, M.D.**

Dr. Makin conducted a consultative examination of Claimant at the Agency's request.[56] He noted a "history of neck fracture status post surgery with chronic pain and residual mild left upper extremity weakness" and "osteoarthritis left knee."[57] He assessed that Claimant is "capable of sitting 6-8 hours a day in the workplace but would have difficulty with any work involving repetitive movements of the neck and prolonged flexion and extension of the neck." He limited her to lifting **5–10 pounds** with her left/dominant arm. The ALJ found Dr. Makin's opinion "not persuasive."[58]

Claimant argues that the ALJ's explanation for rejecting Dr. Makin's is lacking. The ALJ found, without further explanation, that because Dr. Makin had few prior medical records to review, he was not aware of Claimant's complaints of *right* knee pain three months earlier.[59] He concluded that "the longitudinal record regularly shows no more than some decreased cervical and left knee range of motion, but inconsistently throughout the record, and with normal strength and sensation throughout."[60] It is unclear if the ALJ was referring to "normal strength" of Claimant's left arm, or of her left knee, but the medical records he cited primarily addressed her left knee.[61] One outpatient clinic note dated June 20, 2023, noted "Normal" upper and lower extremity strength without further

---

[56] Tr. 602–04.
[57] Tr. 604.
[58] Tr. 26.
[59] *Id.*
[60] *Id.*
[61] Tr. 575, 869, and 949.

comment,[62] while another record cited by the ALJ noted "she also reports a lot of weakness in her left arm."[63]

It is unclear what conclusion the ALJ was trying to convey by noting that Claimant had right knee pain three months earlier, because the record he cites clearly concerns the left knee.[64] Defendant's brief suggests that Dr. Makin's opinion was based on Claimant's "unreliable self-reports instead of objective medical evidence,"[65] but that argument is supported by neither the ALJ opinion nor the underlying medical records he cited.[66] Claimant maintains that any reference to problems with her "right knee" were a result of typographical error.[67]

In light of the foregoing, the Court agrees with Claimant that the ALJ's dismissal of Dr. Makin's opinion as "not persuasive" was not supported by substantial evidence. As a result, the ALJ did not address Dr. Makin's finding that she was capable of lifting only 5–10 pounds with her dominant arm, which is a critical finding in this case for reasons discussed below.

## C.  Past Relevant Work

The Court find additional issues with the ALJ's opinion. At Step 4, the ALJ concludes that Claimant is capable of performing her past relevant work as a grocery checker (light, SVP 3) and as a composite job of grocery checker/general ledger

---

[62] Tr. 720.
[63] Tr. 949.
[64] Tr. 899.
[65] Docket 13 at 7.
[66] Tr. 26.
[67] Docket 12 at 15.

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 11
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 11 of 15

bookkeeper (sedentary, SVP 5).[68]  Accordingly, the ALJ did not reach Step 5.  The ALJ took testimony of a vocational expert in order to reach his Step 4 conclusions.  The transcript of the exchange between the ALJ and the VE raises several questions.

The ALJ first asked the VE to "classify the Claimant's past work."[69]  The VE identified "waitress" as light work, SVP-3; "Sales supervisor" as heavy work SVP-4; "Coffee shop manager" as light work SVP-7; "Department manager" as medium work SVP-7; Grocery checker as light work SVP-3; and a composite job of grocery checker and "general ledger bookkeeper," the latter being sedentary SVP-5.

The ALJ then presented his hypothetical.  He ruled out the SVP-7 jobs, and proposed a hypothetical individual between 55–58 years old with a high school education and two years of college, who is capable of light work with "occasional climbing of ramps and stairs, never climbing ladders, ropes or scaffolds, frequent balancing, occasional stooping and crouching, never kneeling or crawling[,] occasional overhead reaching with the left dominant arm, frequent overhead reaching with the right non-dominant arm, frequent pushing and/or puling with the left dominant arm and occasional exposure to extreme vibrations and to unprotected heights."[70]  He asked the VE "is there any [of Claimant's past] work that would survive that hypothetical."[71]  The VE initially answered

---

[68] "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.4 (9th Cir. 2009) (citation omitted).  "[U]nskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." *Id.*
[69] Tr. 55.
[70] Tr. 56.
[71] Tr. 57.

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 12
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 12 of 15

"no, the past work would certainly require bilateral overhead as in the waitress and the grocery checker."[72] But upon further questioning by the ALJ, the VE changed her mind, concluding "we may go ahead with the grocery checker."[73]

Next, the ALJ sought guidance from the VE on "transferable skills."[74] Transferable skills are relevant at Step 5, when considering the Grids and determining which skills from previous work experience could transfer to other jobs in the national economy. The VE went on to conclude that there were no transferrable skills to be considered.[75] She specifically noted that the SVP-4 skills would not transfer due to "age criteria."[76] The ALJ summarized: "So, it sounds like either at light or sedentary, no transferable skills," to which the VE agreed.[77]

The Court sees two problems. First, if Dr. Makin's opinion is credited, Claimant would be capable of only sedentary work, as she would be limited to 5–10 pounds with her left arm.[78] All of her past relevant work would be eliminated, and she would be deemed disabled at Step 5 pursuant to § 201.06 of the Grids.[79] Having concluded that the

---

[72] Tr. 57.
[73] *Id*.
[74] Tr. 58.
[75] Tr. 57–58.
[76] Tr. 58.
[77] *Id*.
[78] "**Sedentary work** involves lifting no more than **10 pounds** at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).
[79] 20 C.F.R. § Pt. 404, Subpt. P, App. 2 §201.06.

ALJ rejected Dr. Makin's opinion without providing substantial evidence, remand is required on this point alone.

Second, even if the ALJ properly rejected Dr. Makin's opinion, and correctly concluded that Claimant was limited to light work, the Court questions whether the ALJ's Step 4 determination is accurate. The VE initially testified that Claimant could not perform any of her past light work due to the overhead reaching restrictions. Claimant is considered in the "advanced age" category. According to the Grids, an individual with Claimant's education who is limited to light work and who lacks transferable skills qualifies as disabled.[80] Had the ALJ reached Step 5, Claimant would be disabled based on § 202.06 of the Grids.

## V. CONCLUSION

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence for the reasons discussed in this Order.

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 12** is **GRANTED** and this matter is **REMANDED** for further proceedings.

---

[80] 20 C.F.R. § Pt. 404, Subpt. P, App. 2 §202.06.

*Julia R. v. Comm'r of Social Security*  Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings  Page 14
Case 1:24-cv-00011-RRB   Document 15   Filed 03/04/25   Page 14 of 15

IT IS SO ORDERED this 4th day of March, 2025, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*Julia R. v. Comm'r of Social Security*     Case No. 1:24-cv-00011-RRB
Order Remanding for Further Proceedings     Page 15
Case 1:24-cv-00011-RRB     Document 15     Filed 03/04/25     Page 15 of 15